USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: NOV 0 6 2013

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

TRIODETIC INC.,

                Plaintiff,

         -v-

STATUE OF LIBERTY IV, LLC, et al.,

                Defendants.
------------------------------------------------------------X

12 Civ. 6348 (KBF)

MEMORANDUM
DECISION & ORDER

KATHERINE B. FORREST, District Judge:

On August 20, 2012, Plaintiff Triodetic, Inc. filed a complaint seeking in rem enforcement of a maritime lien against the M/V Hornblower Hybrid and asserting in personam claims for conversion and unjust enrichment against defendants Statute of Liberty VI LLC and Statue Cruises, LLC. (ECF No. 1.) Defendants now move for summary judgment against plaintiff on all claims. (ECF No. 22.) For the reasons set forth below, defendant's motion is GRANTED.

I. BACKGROUND

A. Factual Background

Defendant Statute of Liberty VI LLC is the owner of the M/V Hornblower Hybrid ("the vessel"); defendant Statute Cruises LLC is the operator or charterer of the vessel and operates it in harbor tours in and around New York City. (Compl. ¶¶ 3–4, ECF No. 1; Ans. ¶¶ 3–4, ECF No. 11.) In 2009, defendants decided to convert the vessel from a "casino-type" vessel to a passenger-carrying "trybrid" vessel for use in their operations as a National Park Service concessionaire. (Plaintiff's Local

Rule 56.1 Response ("Pls.' SOF") ¶ 4; Defendants' Statement of Material Facts ("Defs.' SOF") ¶ 4, ECF No. 27.)

Defendants engaged Derecktor Shipyard Conn. LLC ("DSY"), the contractor in this case, to convert the vessel. Defendants had previous experience working with DSY, and believed that DSY was capable and an appropriate choice for the project. (Pl.'s SOF ¶ 5; Defs.' SOF ¶ 5.) Included in DSY's scope of work were the design, fabrication, and installation of an atrium on the vessel. (Id.) Defendants had no prior experience with structures like the contemplated atrium, and tasked DSY with locating a competent subcontractor to undertake the work. (Pl.'s SOF ¶ 6; Defs.' SOF ¶ 6.)

In July and August 2009, DSY discussed with plaintiff Triodetic the possibility of subcontracting this project to it. (Pl.'s SOF ¶ 7; Defs.' SOF ¶ 7.) Plaintiff then began initial design work and provided initial pricing estimates to DSY in January 2010. (Pl.'s SOF ¶ 8; Defs.' SOF ¶ 8.) On November 4, 2010, defendants entered into a Vessel Repair Agreement ("VRA") that called for DSY to perform the specified work for a fixed price of $3,117,500. (Pl.'s SOF ¶ 9; Defs.' SOF ¶ 9.) Subsequent change orders increased the price by $867,571.60 for a total of $3,985,071.60. (Id.) While the VRA permitted DSY to use subcontractors, it held DSY accountable and responsible for the work. (Pl.'s SOF ¶ 10; Defs.' SOF ¶ 10.)

On December 16, 2010, DSY issued a purchase order to plaintiff to fabricate and install the entire atrium structure. (Pl.'s SOF ¶ 12; Defs.' SOF ¶ 12.) That

order contained DSY's standard terms and conditions, which provided in paragraph 10 as follows:

> The parties agree that no lien or other in rem proceeding may attach or otherwise affect title to the Vessel for which the items are being utilized or any other vessel or property owned by the Authority in connection with any dispute or claim arising under or in connection with this [purchase order].

(Pl.'s SOF ¶ 11; Defs.' SOF ¶ 11.)

Plaintiff continued to work on plans for the atrium. In or about May 2011, plaintiff and DSY entered into a series of change orders pursuant to which plaintiff would provide the materials, but DSY would actually build and install the steel framework for the atrium. (Pl.'s SOF ¶ 12; Defs.' SOF ¶ 12.) Also around that time, DSY asked defendants to pay some of DSY's subcontractors directly, including plaintiff, in order to expedite the process. (Id.) Plaintiff sought payment of $125,000 from DSY prior to the shipment of glass for the project; DSY asked defendants to pay this invoice directly, which defendants did. (Id.)

In the late spring, DSY claimed to have worked all of its "budgeted hours" under the VRA, and sought a commitment from defendants to pay above the contract price. (Pl.'s SOF ¶ 13; Defs.' SOF ¶ 13.) Defendants refused to do so, and a stalemate ensued. (Id.) Ultimately, DSY stopped work on the vessel, but permitted it to stay in the yard and permitted defendants to complete work on the vessel. (Pl.'s SOF ¶ 14; Defs.' SOF ¶ 14.) That work was complete by November 2011; the atrium was complete by the end of July or August 2011. (Id.)

There is no contractual privity between plaintiff and defendants.

B. Procedural History

Plaintiff filed its complaint on August 20, 2012. (ECF No. 1.) Plaintiff asserts one cause of action in rem against the vessel and two causes of action in personam against defendants Statute of Liberty VI LLC and Statue Cruises, LLC. Plaintiff's first cause of action seeks enforcement of a material lien against the vessel pursuant to the Maritime Commercial Instruments and Liens Act of 1988, 46 U.S.C. § 31342: plaintiff claims it is entitled to all amounts due for the design, fabrication, delivery, and installation of glasswork and associated products on the vessel. (Compl. ¶ 18.) Plaintiff's second cause of action alleges that defendants were unjustly enriched by their use of materials designed, fabricated, and delivered by plaintiff. (Compl. ¶ 19.) Plaintiff's third cause of action alleges that, by defendants' unauthorized use and installation of the glasswork and associated products, defendants engaged in conversion. (Compl. ¶ 21.)

On July 16, 2013, defendants moved for summary judgment as to all counts. (ECF No. 22.)

II. STANDARD OF REVIEW

Summary judgment may not be granted unless a movant shows, based on admissible evidence in the record placed before the Court, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating "the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). On summary judgment, the Court must "construe all evidence in

the light most favorable to the nonmoving party, drawing all inferences and resolving all ambiguities in its favor." Dickerson v. Napolitano, 604 F.3d 732, 740 (2d Cir. 2010).

Once the moving party has asserted facts showing that the non-movant's claims cannot be sustained, the opposing party must set out specific facts showing a genuine issue of material fact for trial. Price v. Cushman & Wakefield, Inc., 808 F. Supp. 2d 670, 685 (S.D.N.Y. 2011); see also Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009). "[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," because "[m]ere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist." Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (citations omitted); see also Price, 808 F. Supp. 2d at 685 ("In seeking to show that there is a genuine issue of material fact for trial, the non-moving party cannot rely on mere allegations, denials, conjectures or conclusory statements, but must present affirmative and specific evidence showing that there is a genuine issue for trial.").

Only disputes relating to material facts—i.e., "facts that might affect the outcome of the suit under the governing law"—will properly preclude the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (stating that the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts").

# III. DISCUSSION

## A. Maritime Lien

Plaintiff's first cause of action claims a maritime lien against the vessel pursuant to the Maritime Commercial Instruments and Liens Act of 1988 ("the Act"), which provides that "a person providing necessaries to a vessel on the order of the owner or a person authorized by the owner . . . has a maritime lien on the vessel," and "may bring a civil action in rem to enforce the lien." 46 U.S.C. § 31342. There is no dispute that the materials and services that plaintiff was to provide pursuant to the DSY purchase order were "necessaries" within the meaning of the Act. (Defs.' Mem. of L. in Supp. of Mot. for Summ. J. ("Defs.' Mot.") 6, ECF No. 23.)

The resolution of liability for this count is straightforward: plaintiff expressly waived any maritime lien in its contract with DSY. As set forth above, the purchase order signed by plaintiff provides for such an explicit waiver. This waiver is valid and enforceable under the Act, which "does not prevent a mortgagee or other lien holder from waiving or subordinating at any time the lien holder's right to a lien." 46 U.S.C. § 31305. The express waiver precludes plaintiff's invocation of any maritime lien.

Plaintiff does not dispute that a supplier of necessaries may waive the right to a maritime lien in general, but argues that, given the presumption in favor of such liens, clear and affirmative proof of waiver is required. In particular, plaintiff cites Equilease Corp. v. M/V Sampson, 793 F.2d 598, 605 (5th Cir. 1986) (explaining that there is "a presumption . . . that one furnishing necessaries to a vessel acquires

a maritime lien"); Newport News Shipbuilding & Dry Dock Co. v. S.S. Independence, 872 F. Supp. 262, 267 (E.D. Va. 1994) ("The party attacking the lien under a waiver theory bears the burden of presenting clear and affirmative proof that the lien was waived."); Nacirema Operating Co. v. S.S. Al Kulsum, 407 F. Supp. 1222, 1224 (S.D.N.Y. 1975). However, this case presents exactly the "clear and affirmative proof" plaintiff seeks: an express written waiver on the face of the contract. Newport News, 872 F. Supp. at 267. In none of the three cases that plaintiff cites did the court confront an express written waiver, as here.

Plaintiff also argues that the waiver excludes the lien in this case, because paragraph 10 of the standard terms and conditions applies only to purchase orders issued in connection with work done on vessels or property by "the Authority." (Mem. of L. in Opp. to Mot. of Defs. for Summ. J. ("Pl.'s Opp.") 9, ECF No. 30.) Plaintiff claims that "the Authority" refers to some "public entity (perhaps the Bridgeport Port Authority on whose land the DSY yard appear [sic] to have been situated)," whereas the vessel here was a privately owned vessel. (Id.) Therefore, Plaintiff argues, paragraph 10 simply does not apply to the vessel at issue in this case, the Hornblower Hybrid.[1]

To accept plaintiff's argument would require a strained and rather tortured reading of the contract. Plaintiff entirely ignores the phrase "the Vessel for which the items are being utilized," also present in the standard terms and conditions. (Pl.'s SOF ¶ 11; Defs.' SOF ¶ 11; see Pl.'s Opp. 9.) The Court reads the purchase

---

[1] The Court need not resolve the meaning of "the Authority." It is enough that the purchase order expressly waived any maritime lien with respect to "the Vessel for which the items are being utilized," as explained infra. (See Pl.'s SOF ¶ 11; Defs.' SOF ¶ 11.)

order as a whole, as it must. See Law Debenture Trust Co. of N.Y. v. Maverick Tube Corp., 595 F.3d 458, 467 (2d Cir. 2010). The purchase order as a whole called for plaintiff to fabricate and install a specific atrium structure on one specific vessel, the Hornblower Hybrid. Therefore, the only reasonable reading of the standard terms and conditions, an addendum to that specific purchase order, is also as a reference to that vessel. (Pl.'s SOF ¶ 12; Defs.' SOF ¶ 12.) Thus—even accepting plaintiff's argument that "any other vessel or property owned by the Authority" does not itself refer to the Hornblower Hybrid at issue here—the only reasonable understanding of "the Vessel for which the items are being utilized" is as a reference to the vessel underlying the contract, the Hornblower Hybrid.

At best, the phrase "owned by the Authority" might be read to apply to "the Vessel for which the items are being utilized" as well as to "any other vessel or property." That reading, however, renders the phrase "the Vessel for which the items are being utilized" a nullity, because the general "any other vessel or property" would necessarily subsume the specific "Vessel for which the items are being utilized." In other words, if plaintiff's reading were correct, the contract might as well read as follows: "The parties agree that no lien or other in rem proceeding may attach or otherwise affect title to any vessel or property owned by the Authority in connection with any dispute or claim arising under or in connection with this [purchase order]." (See Defs.' Reply Mem. of L. in Supp. of Mot. for Summ. J. ("Def.'s Reply") 10, ECF No. 36; Pl.'s SOF ¶ 11; Defs.' SOF ¶ 11.) That reading of the purchase order is contrary to principles of contractual interpretation. See

LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp., 424 F.3d 195, 206 (2d Cir. 2005) (explaining that a contract "should be construed so as to give full meaning and effect to all of its provisions") (internal quotation marks and citation omitted).

Even assuming that plaintiff were correct that "any other vessel or property owned by the Authority" did not include the Hornblower Hybrid in its purview, "the Vessel for which the items are being utilized" surely does, and that phrase cannot be read out of the contract. Accordingly, plaintiff expressly waived any claim to a maritime lien. Defendant is entitled to summary judgment on the first count of plaintiff's complaint.

B. Unjust Enrichment

Plaintiff's second count alleges that defendants have been "unjustly enriched" by "their use of materials designed, fabricated and delivered by plaintiff . . . all without approval from, or payment to," plaintiff. (Compl. ¶ 19.) Plaintiff seeks "restitution in the form of a money payment" for the unspecified "value of the materials and labor" (Pl.'s Opp. 10–11).

Unjust enrichment is a cognizable claim under United States admiralty law. Mason Agency Ltd. v. Eastwind Hellas SA, No. 09 Civ. 6474 (DLC), 2009 WL 3109821, at *6 (Sept. 29, 2009) (citing Gulf Oil Trading Co. v. Creole Supply, 596 F.2d 515, 520 (2d Cir. 1979)). "Under New York law, a plaintiff asserting a claim of unjust enrichment must show that the defendant was enriched at the plaintiff's expense and that equity and good conscience require the plaintiff to recover the

enrichment from the defendant." Golden Pac. Bancorp v. FDIC, 375 F.3d 196, 203 n.8 (2d Cir. 2004).

Plaintiff's unjust enrichment claim fails because plaintiff cites no record evidence to show that DSY was not paid for the materials used by defendants. It is uncontested that the Vessel Repair Agreement and purchase order called for the installation of the entire atrium structure, together with the necessary materials, for one fixed price. (Pl.'s SOF ¶ 9, 11–12; Defs.' SOF ¶ 9, 11–12.) It is also uncontested that defendants made that payment to DSY as well as at least some direct payments to DSY's subcontractors and vendors, including plaintiff. (Pl.'s SOF ¶ 12, 15; Defs.' SOF ¶ 12, 15.) Plaintiff points to no open invoices or evidence of an ongoing dispute between DSY and defendants that would indicate that defendants owe money to DSY, let alone to plaintiff, a subcontractor.

Plaintiff attempts to mask the fact that defendants did in fact make the required fixed payment in accordance with the VRA by stating that "the VRA did not provide for a specific amount to be paid for Triodetic materials or services; in practice the fixed price was fluid and subject to adjustment." (Pl.'s Opp. 14.) It is true that early change orders increased the price. (Pl.'s SOF ¶ 9; Defs.' SOF ¶ 9.) However, later change orders did not alter the price but rather reallocated responsibility for parts of the project among plaintiff and DSY. (Pl.'s SOF ¶ 12; Defs.' SOF ¶ 12.) In any event, plaintiff's vague gesturing that "the fixed price was fluid and subject to adjustment" is insufficient to trump the fixed price that existed

on the face of the VRA at the time of the transfer of goods—a sum that defendants did indeed pay, albeit to DSY. (Pl.'s SOF ¶ 15; Defs.' SOF ¶ 15.)[2]

Plaintiff also alleges a fraud-like theory supporting its unjust enrichment claim, on the basis that defendants refused to pay DSY amounts above the contract price after DSY had exhausted its budgeted hours under the VRA. (Pl.'s Opp. 11; Pl.'s SOF ¶ 13; Defs.' SOF ¶ 13.) Specifically, plaintiff claims that defendants were "[a]ware of DSY's failing financial condition" and only paid plaintiff "to induce Triodetic to deliver the materials to the site." (Pl.'s Opp. 11.) According to plaintiff, defendants "knew DSY had not, and it could not, pay Triodetic for the materials and services, but nonetheless, [d]efendants used these materials, and accepted Triodetic's services, knowing Triodetic would never get paid." (Pl.'s Opp. 12.) However, plaintiff cites no evidence to support any such knowledge—certainly none that would merit granting equitable relief for unjust enrichment, in light of the fact that defendants did indeed pay the fixed price to DSY required on the face of the VRA. (Pl.'s SOF ¶ 15; Defs.' SOF ¶ 15.)

"Equity and good conscience" do not require that this Court award plaintiff restitution. Accordingly, the Court grants summary judgment to defendant as to the second count of plaintiff's complaint.

---

[2] The Court notes that plaintiff might have some claim against DSY, if DSY failed to pay plaintiff, as plaintiff alleges. (Pl.'s Opp. 14–15.) Such a claim is not before this Court.

C. <u>Conversion</u>

Plaintiff's third cause of action claims that defendants converted glasswork and associated products that plaintiff designed, fabricated, and delivered through their "unauthorized use and installation" of those products. (Compl. ¶ 21.)

To state a claim for conversion, "plaintiff must allege that (1) the party charged has acted without authorization, and (2) exercised dominion or a right of ownership over property belonging to another, (3) the rightful owner makes a demand for the property, and (4) the demand for the return is refused." <u>Lenard v. Design Studio</u>, 889 F. Supp. 2d 518, 531 (S.D.N.Y. 2012) (internal quotation marks and citation omitted).

Plaintiff's claim fails because the record and complaint are devoid of any evidence or allegations that plaintiff in fact owned the materials that defendants allegedly converted. It is undisputed that plaintiff shipped glass under bills of lading that showed DSY as the consignee, not defendants. (Pl.'s SOF ¶ 17; Defs' SOF ¶ 17.) "Bills of lading represent title to cargo." <u>Thypin Steel Co. v. Certain Bills of Lading Issued for Cargo of 3017 Metric Tons</u>, No. 96 Civ. 2166 (RPP), 1998 WL 912100, at *3 (S.D.N.Y. Dec. 30, 1998). Consequently, when plaintiff released bills of lading to DSY, it transferred title to as well as possession of the goods. DSY, having both possession of the physical goods and title to the goods, then conveyed the goods to defendants pursuant to the Vessel Repair Agreement. Therefore, even assuming that plaintiff had a right to possession of the goods at one point, it lost

any such right when it delivered the bills of lading, together with the goods, to DSY.[3]

Plaintiff attempts to avoids the necessary outcome of this transfer through allegations regarding defendants' state of mind similar to those made in support of its unjust enrichment claim—and similarly unavailing. Specifically, plaintiff argues that defendants knew that, upon receiving materials from plaintiff, "Triodetic had not been paid for the glass, and that therefore DSY had no right to release the glass for use . . . . Defendants knew Triodetic had not been paid over $230,000 for materials, and Triodetic must be paid before they could be used." (Pl.'s Opp. 17.)[4] Even assuming that defendants did directly owe plaintiff money (a claim that the Court rejects supra), nothing in this fact pattern constitutes conversion by defendants. At the time that the goods passed to defendants, DSY, not plaintiff, had both possession and title of those materials.

Accordingly, defendants are entitled to summary judgment on the third count of plaintiff's complaint.

---

[3] Plaintiff's argument that "the law of conversion is concerned with possession, not title," is, even if true, irrelevant. (See Pl.'s Opp. 15.) At the time that defendants took possession of the materials in question, plaintiff had neither possession nor title; DSY had both. (See Defs.' Reply 14; Pl.'s SOF ¶ 17; Defs.' SOF ¶ 17.)

[4] The Court reiterates that any claim against DSY that DSY failed to pay plaintiff outstanding amounts for materials is not before this Court. (See Pl.'s Opp. 17–18.)

## IV. CONCLUSION

For these reasons, defendant's motion for summary judgment is GRANTED as to all three counts of plaintiff's complaint. The Clerk of Court is directed to close the motion at ECF No. 22 and to terminate this action.

SO ORDERED.

Dated:    New York, New York
November 6, 2013

*[signature]*
KATHERINE B. FORREST
United States District Judge